UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

2005 JAN 20  A 11: 42

U.S. DISTRICT COURT
BRIDGEPORT, CONN

| | |
|---|---|
| RAYMOND P. BALDYGA, JR., | : |
| Plaintiff, | : Civil Action No. |
| | : 3:02 CV 1141 (JCH) |
| v. : | |
| | : January 21, 2005 |
| SIKORSKY AIRCRAFT CORPORATION, | : |
| Defendant. | : |

**DECLARATION OF THADDEUS GARBIEN**

I, Thaddeus Garbien, hereby declare as follows:

1.  I was employed by defendant Sikorsky Aircraft Corporation ("Sikorsky Aircraft" or "the Company") from February 10, 1975 through March 31, 2004, when I retired from the Company. My last position with Sikorsky Aircraft was Manager, Human Resources. I held this position from 1987 until my retirement. In this position, from 1987 through approximately September 2001, I was responsible for all employee and labor relations activity between the Company and International Brotherhood of Teamsters, Local 1150 ("Local 1150" or "the Union"), and I was one of the representatives of the Company who negotiated collective bargaining agreements with the Union. I am making this declaration based on personal knowledge.

2.  I was born in 1950. I am currently 54 years old.

3.  Attached hereto as Exhibit A is a true and correct copy of a job pay history report for Mr. Baldyga.

4.  During his entire tenure with the Company, Mr. Baldyga was a member of

the bargaining unit whose employment was governed by the terms and conditions of a Collective Bargaining Agreement ("CBA") between the Company and Local 1150. Attached hereto as Exhibit B is true and correct copy of the CBA between the Company and Local 1150, which covered the period February 15, 1999 through February 17, 2002. The Company and the Union negotiated and agreed upon occupational groups, and these occupational groups are set forth in the CBA.

5. On May 4, 1998, as a result of a grievance, Mr. Baldyga was promoted from the position of Senior Layout Inspector, department 1530, occupational group 50, labor grade 3, back to the Working Leader – Receiving and Layout Inspection position in occupational group 54, labor grade 2, department 1530.

6. Sikorsky Aircraft has long maintained a policy against discrimination and treats all employees on the basis of their qualifications, without regard to, among other things, age, sex, race, color, religion, national origin or disability. This policy is set forth in the Company's Hourly Employee Manual, which is provided to all hourly employees, and emphasizes that it is Sikorsky Aircraft's policy "to recruit, hire, train and promote employees in all job classifications without regard to race, color, age, religion, sex, handicap, national origin, marital or veteran status." Attached hereto as Exhibit C is a true and correct copy of the Company's Equal Employment Opportunity Policy from the Hourly Employee Manual. The Company's policy against discrimination is reiterated every year through General Notices. It is the Company's policy that these General Notices are routinely posted on all bulletin boards in all Sikorsky Aircraft facilities. Attached hereto as Exhibit D are true and correct copies of General Notices dated February 14, 2000 and February 19, 2001.

7.  As a result of a continued downturn in its government and commercial business, Sikorsky Aircraft continued to repeatedly downsize its workforce and both hourly and salaried workforce reduction programs were implemented. In early 1999, in accordance with the CBA, the Company implemented a voluntary early retirement program and provided hourly employees age 55 and over with 25 or more years of credited service with the option to voluntarily participate in the program and leave the Company. During 1999-2000, approximately 475 hourly employees voluntarily left the Company under this program. In 2001, the Company continued to evaluate its business conditions. During 2001, when department headcounts were required to be reduced, the Company, in some cases, reassigned supervisors back to hourly positions within the bargaining unit. In addition, during 2001, the Company closed a satellite facility and consolidated some manufacturing operations in order to become more efficient and reduce costs. Moreover, involuntary hourly workforce reductions were implemented due to a decrease in the Company's volume of work and a requirement to reduce cost to enhance the Company's worldwide competitiveness. All hourly involuntary workforce reductions are carried out in accordance with the terms of the CBA. Pursuant to the terms of the CBA, hourly employees subject to layoff are chosen by reverse seniority within non-interchangeable occupational groups.

8.  The Company had long considered certain jobs "critical" and, in 1996, the Company and the Union memorialized the list deemed critical in Letter 18 of the CBA. Because employees in occupational groups frequently exist in more than one department, it was essential that this critical skills protection exist. For example, "VH" jobs include all Presidential helicopter positions. Such jobs require security clearances that regularly

take a year or more to obtain. The Company was thus required, as a matter of business exigency, to protect employees in those jobs – regardless of their seniority – so as to guarantee there will be a sufficient number of employees performing work on the Presidential fleet of helicopters even if there were a significant layoff affecting occupational groups that occupy the VH/Presidential department as well as other departments. Stated otherwise, but for Letter 18 of the CBA, because employees are laid off in reverse seniority order within an occupational group scheduled for layoff, junior employees working within the VH Department would be subject to layoff, leaving the Company with a manpower shortage in an important project which cannot be backfilled by the transfer of more senior employees in the same occupational group because such employees lack the security clearance to work on the VH/Presidential fleet. Many of the other jobs on the Letter 18 list deal with jobs within occupational groups that require specialized knowledge obtained on the job. But for Letter 18, more senior employees in the same occupational group would backfill into those jobs when layoffs occur in that particular occupational group but they would lack the skills and experience to perform those important jobs. Accordingly, Letter 18 of the CBA protects employees in critically skilled positions from layoff regardless of their seniority.

9.  Prior to the May 2001 layoff, I had conversations with Mark Lindsey and James Nastri regarding Department 1530. At no time during these conversations was the age of any employee discussed, and age was never discussed as being a factor in any of the Company's decisions. With respect to the May 2001 layoff, Sikorsky Aircraft department managers informed me which departments and occupational groups were subject to layoff and how many employees needed to be laid off within each occupational

group. As the decisionmaker in accordance with the CBA, I then reviewed the seniority list in accordance with the express terms of the CBA to determine which specific employees would be laid off. Attached hereto as Exhibit E is a true and correct copy of a list of all bargaining unit employees in occupational groups 50 and 54 just prior to the May 2001 layoff. According to this list, and following the procedures set forth in the CBA, I determined that the three most junior employees in occupational group 54 – Mary Poleio, Renaldo Garcia and Daniel Hespelt – were protected from layoff because they were employed in critically skilled positions, as set forth in Letter 18 of the CBA. The next two most junior employees in terms of seniority – Paul Wojcicki and William Lucas – were not employed in critically skilled positions, and therefore were subject to layoff. The next most junior employee by seniority – Gertrude Mcmillian – was employed in a critically skilled position and was, therefore exempt from layoff pursuant to the CBA. The remainder of the employees in occupational group 54 in reverse seniority order were Reba Gomes, Raymond Baldyga, Bruce Redmann, Joseph Lesko, and Adrian Stanley, none of whom were employed in a critically skilled position. As these employees were not employed in critically skilled positions, they were not protected from layoff under the CBA. Thus, based solely on seniority in accordance with the CBA, I determined that the four most junior employees who were not exempt from layoff pursuant to Letter 18 of the CBA because of critical skills were Paul Wojcicki, William Lucas, Reba Gomes and Raymond Baldyga. These four employees were slated to be laid off from occupational group 54 effective May 4, 2001.

    10.    If the Company had demoted Mr. Baldyga back to the labor grade 3 position in occupational group 50 in May 2001 instead of laying off Mr. Baldyga, the

Company would have violated Section 8.11 of the CBA between the Company and the Union, as both occupational groups 50 and 54 were impacted by layoffs in May 2001. This distinguished the May 2001 situation from Mr. Baldyga's demotion in 1996, as in 1996, there was a layoff in occupational group 50 but not in occupational group 54. Section 8.11 was inserted into the CBA at the Union's behest so as to prevent the Company from moving a favored employee out of his or her occupational group and into another occupational group just prior to a layoff in the employee's original occupational group. Thus, the provision states that the employee maintains seniority in the original occupational group for 60 days after being transferred to a different occupational group.

11. Based on the fact that employees with high seniority – including Mr. Baldyga – were slated to be laid off in May 2001 from occupational group 54, I had a conversation in April 2001 with Jeffrey Cederbaum, then Secretary/Treasurer of Local 1150. I specifically asked Mr. Cederbaum if the Union wanted to give the Company a waiver for any breach of the CBA so that the Company could transfer Mr. Baldyga and Mr. Lucas back to a labor grade 3 position in occupational group 50 instead of including them in the layoff. This waiver was necessary since such a transfer would otherwise violate Section 8.11 of the CBA. Mr. Cederbaum thought about it for a few minutes as we talked about other issues. He then told me that he was not going to give the Company a waiver to place Mr. Baldyga and Mr. Lucas back into occupational group 50 and therefore the Company should lay off employees in occupational group 50 and lay off employees in seniority order in occupational group 54. Accordingly, Paul Wojcicki, William Lucas, Reba Gomes and Raymond Baldyga were laid off from occupational group 54 effective May 4, 2001. All employees junior to Mr. Baldyga in terms of

seniority who remained employed in occupational group 54 were exempt from layoff pursuant to Letter 18 of the CBA. There was no employee junior to Mr. Baldyga who was not critically skilled who was not selected for layoff from occupational group 54.

12. Mr. Baldyga's age played absolutely no part in his selection for layoff. Mr. Baldyga was selected for layoff based solely upon seniority within occupational group 54, pursuant to the express terms of the CBA. There was absolutely no other reason for Mr. Baldyga's selection for layoff.

13. Attached hereto as Exhibit F is a true and correct copy of a list of all bargaining unit employees laid off effective May 4, 2001 from the Company's Connecticut operations. This list demonstrates that a total of 26 employees were laid off in May 2001, two of whom – David Garcia and Charles Vives – took a voluntary layoff. The remaining 24 bargaining unit employees were involuntarily laid off from numerous departments and occupational groups. Attached hereto as Exhibit G is a list of all employees in occupational groups 50 and 54 just prior to the May 2001 layoff with their dates of birth. This list was compiled based on Company records. A review of Exhibits E, F & G demonstrates that in the May 2001 layoff, Sikorsky Aircraft retained employees in occupational group 54 who were the following ages at the time of the layoff: 55, 58, 50, 49, 34, 51 and 43, and further demonstrates that all the employees who were retained in occupational group 54 because they had more seniority than Mr. Baldyga – including those employees in Mr. Baldyga's same job code – were over the age of 40 and that three out of the four employees who were critically skilled and protected from layoff were over the age of 40. A review of Exhibits F & G demonstrates that in the May 2001 layoff, Sikorsky Aircraft laid off employees younger than Mr. Baldyga, and laid off employees

under the age of 40. A review of Exhibits E, F & G demonstrates that the two incumbents who remained in the same position Mr. Baldyga held at the time Mr. Baldyga was laid off in May 2001 (occupational group 54, job code 5420, labor grade 2) were 49 and 51 years old at the time of the layoff. Based on an analysis of Exhibits E & G, the average age of employees in occupational group 54 prior to the May 2001 layoff was 48.09. Based on an analysis of Exhibits E, F & G, the average age of employees in occupational group 54 after the May 2001 layoff was 48.57.

14. In January 1993, there were 5914 bargaining unit employees in the Company's Connecticut and West Palm Beach facilities. In January 1999, there were 4078 bargaining unit employees in the Connecticut and West Palm Beach facilities. After the May 2001 layoff, there were 3397 bargaining unit employees in the Company's Connecticut and West Palm Beach facilities. More than 90% of the bargaining unit employees are located in Connecticut.

15. Attached hereto as Exhibit H is a true and correct copy of Mr. Baldyga's Affidavit of Illegal Discriminatory Practice (hereinafter "administrative charge") filed with the Connecticut Commission on Human Rights and Opportunities ("CHRO").

16. Attached hereto as Exhibit I is a true and correct copy of the CHRO's Notice of Final Agency Action.

17. Attached hereto as Exhibit J is a true and correct copy of the Release of Jurisdiction issued by the CHRO.

18. Attached hereto as Exhibit K is a true and correct copy of Grievance No. 01-0480, which Mr. Baldyga filed concerning his layoff in May 2001.

I hereby declare under penalty of perjury that the above is true and correct.

Executed this 17th day of January, 2005, in _____Oxford_____, Connecticut.

_____
Thaddeus Garbien